Castellar Partners LLC, appellant, v.
AMP Limited et al., appellees.

___ N.W.2d ___

Filed June 19, 2015.    No. S-14-461.

1.  **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

2.  **Final Orders: Appeal and Error.** A trial court's decision to certify a final judgment pursuant to Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) is reviewed for an abuse of discretion.

3.  **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4.  **Actions: Parties: Final Orders: Appeal and Error.** With the enactment of Neb. Rev. Stat. § 25-1315(1) (Reissue 2008), one may bring an appeal pursuant to such section only when (1) multiple causes of action or multiple parties are present, (2) the court enters a final order within the meaning of Neb. Rev. Stat. § 25-1902 (Reissue 2008) as to one or more but fewer than all of the causes of action or parties, and (3) the trial court expressly directs the entry of such final order and expressly determines that there is no just reason for delay of an immediate appeal.

5.  **Judgments: Parties: Appeal and Error.** Certification of a final judgment must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.

6.  **Judges: Judgments.** The power that Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) confers upon the trial judge should be used only in the infrequent harsh case as an instrument for the improved administration of justice, based on the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case.

7. **Courts: Judgments.** A trial court considering certification of a final judgment should weigh factors such as (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

8. **Jurisdiction: Final Orders: Appeal and Error.** If the trial court has abused its discretion in certifying an order as final under Neb. Rev. Stat. § 25-1315(1) (Reissue 2008), there is no final order before the appellate court and, thus, no jurisdiction of the appeal.

9. **Judges: Judgments.** When a trial court concludes that entry of judgment under Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Order vacated in part, and appeal dismissed.

Jason M. Bruno and Jared C. Olson, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

James P. Fitzgerald and Patrick D. Pepper, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

Castellar Partners LLC (Castellar) appeals from a purported final judgment dismissing 1 claim, but retaining 10 other claims. The district court concluded that due to a forum selection clause, the claim for breach of contract was required to be litigated in New South Wales, Australia. And it certified the dismissal of that claim as a final judgment pursuant to Neb. Rev. Stat. § 25-1315(1) (Reissue 2008). However, we find

that the certification was improper. Castellar's claims entail "similar issues" and "related facts," and all of the parties remain involved in the litigation before the district court. We therefore dismiss the appeal for lack of jurisdiction.

## BACKGROUND

According to Castellar's amended complaint, it was retained in 2009 by the appellees (collectively AMP parties) to review a "hedge fund portfolio" and the services being provided by another advisor. The AMP parties, which are interrelated, include:

- AMP Limited (AMP)—a "multibillion dollar Australian asset manager";
- AMP Capital Investors (US) Limited (AMP US)—a subsidiary of AMP, incorporated in Delaware;
- AMP Capital Investors Limited (AMPCI)—a second subsidiary of AMP, incorporated in Australia; and
- AMP Capital Alternative Defensive Fund—the hedge fund portfolio managed by AMP and its subsidiaries, involved in "high risk and high return investments."

In its review of the fund, Castellar identified governance and compliance failures and irregularities contributing to losses of "hundreds of millions of dollars over many months." Castellar informed the AMP parties of its findings, and the AMP parties sought Castellar's assistance in resolving the issues it had identified. The AMP parties further sought to remove the acting advisor, and Castellar helped negotiate a settlement with the advisor over several matters, including unpaid fees.

In consideration of Castellar's services, the AMP parties promised Castellar a "substantial monetary reward" that included the opportunity to be "partners . . . in building a global business." Additionally, the AMP parties offered Castellar "customary hedge fund performance fees" and fees from the development of a new investment product.

In December 2009, Castellar and AMPCI executed an "Advisory Agreement." According to Castellar, the agreement

was "one of a series of agreements which . . . would transition into a proper hedge fund advisory contract and global business partnership." Under the agreement, Castellar was required to "provide investment advisory services" regarding the fund in exchange for fees amounting to a one-time payment of $562,500 and an annual retainer of $1 million.

However, the formation of the global business partnership apparently never occurred and the AMP parties terminated their relationship with Castellar in October 2010. Castellar filed suit and alleged that the AMP parties had "recklessly and willfully" misled it in order to obtain its services with regard to the fund. As indicated above, Castellar asserted 11 causes of action. With respect to the advisory agreement, Castellar alleged that the AMP parties had breached the agreement by failing to provide proper notice of termination. And Castellar alleged that such failure had caused it to sustain damages in the amount of $250,000.

AMP US moved to dismiss on the basis of lack of personal jurisdiction. But rather than proceeding on the motion, the parties entered into a stipulation that AMP US would withdraw the motion and that the AMP parties would not contest personal jurisdiction. However, they reserved the right to assert that any claim involving the advisory agreement was required to be litigated in New South Wales.

In the advisory agreement, Castellar and AMPCI specified that all disputes would be subject to the

> exclusive jurisdiction of the courts of the place specified in the Details and courts of appeal from them. Each party waives any right it has to object to an action being brought in those courts including, without limitation, by claiming that the action has been brought in an inconvenient forum or that those courts do not have jurisdiction.

And they further agreed that the "Governing law" would be the "law in force in the place stated in the Details." The "Details" stated that the governing law was the law of New South Wales. But Castellar argues that the details did not contain an additional statement as to jurisdiction.

The AMP parties moved to dismiss Castellar's claim for breach of the advisory agreement. After multiple hearings, the district court granted their request. The court first determined that AMP, AMP US, and the fund were not signatories to the agreement. It concluded that the only parties to the agreement were Castellar and AMPCI. And as to AMPCI, the court found that a "reasonable interpretation" of the agreement required all disputes to be litigated in New South Wales and to be governed by its laws.

After the dismissal of its claim for breach of the agreement, Castellar moved for certification of a final judgment pursuant to § 25-1315(1). On May 15, 2014, the district court sustained the motion, but it set forth no findings or analysis and merely repeated the statutory language that "there is no just reason for delay."[1] Castellar filed a timely notice of appeal, and the appeal was assigned to the docket of the Nebraska Court of Appeals. We moved the appeal to our docket.[2]

## ASSIGNMENTS OF ERROR

Castellar assigns, restated, that the district court erred in (1) determining that the advisory agreement contained an enforceable forum selection clause, (2) failing to find that the advisory agreement was ambiguous and to consider the parties' intentions, (3) failing to find that the forum selection clause was permissive, and (4) rejecting its claim that New South Wales would be a substantially less convenient forum.

## STANDARD OF REVIEW

[1,2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3] A trial court's decision to certify a final judgment pursuant to § 25-1315(1) is reviewed for an abuse of discretion.[4]

---

[1] See § 25-1315(1).

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[3] *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007).

[4] *Id.*

## ANALYSIS

In its assignments of error, Castellar generally asserts that the district court improperly construed the advisory agreement in determining that it contained an enforceable forum selection clause. It contends that the agreement did not specify an exclusive forum in which to litigate disputes or, in the alternative, that any such provision was unenforceable.

[3] However, we do not consider the merits of Castellar's arguments. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5] In our jurisdictional review, we conclude that the district court improperly certified the dismissal of Castellar's claim for breach of the advisory agreement as a final judgment pursuant to § 25-1315(1). Thus, we are without jurisdiction over the appeal.

In *Cerny v. Todco Barricade Co.*,[6] we summarized the legislative intent behind § 25-1315 and set forth a number of factors for trial courts to consider when applying that section. Section 25-1315(1) permits a trial court to certify an otherwise interlocutory order as a final, appealable judgment under the limited circumstances set forth in the statute:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the

---

[5] *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015).

[6] See *Cerny, supra* note 3.

claims or parties, and the order or other form of deci-
sion is subject to revision at any time before the entry of
judgment adjudicating all the claims and the rights and
liabilities of all the parties.

[4] There are three elements constituting a § 25-1315(1)
certification. With the enactment of § 25-1315(1), one may
bring an appeal pursuant to such section only when (1) mul-
tiple causes of action or multiple parties are present, (2) the
court enters a final order within the meaning of Neb. Rev. Stat.
§ 25-1902 (Reissue 2008) as to one or more but fewer than
all of the causes of action or parties, and (3) the trial court
expressly directs the entry of such final order and expressly
determines that there is no just reason for delay of an immedi-
ate appeal.[7]

[5,6] However, as we explained in *Cerny*, § 25-1315(1)
was intended to prevent interlocutory appeals, not make them
easier.[8] And we iterated that certification of a final judgment
must be reserved for the "'unusual case'" in which the costs
and risks of multiplying the number of proceedings and of
overcrowding the appellate docket are outbalanced by pressing
needs of the litigants for an early and separate judgment as to
some claims or parties.[9] The power that § 25-1315(1) confers
upon the trial judge should be used only in the infrequent
harsh case as an instrument for the improved administration
of justice, based on the likelihood of injustice or hardship to
the parties of a delay in entering a final judgment as to part of
the case.[10]

[7] In determining whether certification is warranted, a trial
court must take into account judicial administrative interests
as well as the equities involved.[11] To that effect, a trial court

---

[7] See *id.*

[8] See *id.*

[9] See *id.* at 809, 733 N.W.2d at 886.

[10] See *Cerny, supra* note 3.

[11] See *id.*

should weigh (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.[12]

[8] In the case at bar, Castellar's suit clearly involved multiple parties. And the district court's dismissal of Castellar's claim for breach of the advisory agreement was a final order within the meaning of § 25-1902 as the ultimate disposition of an individual claim for relief.[13] Thus, in this case, the appropriateness of certification turns upon whether the district court properly weighed and considered the above factors. If the trial court has abused its discretion in certifying an order as final under § 25-1315(1), there is no final order before the appellate court and, thus, no jurisdiction of the appeal.[14]

[9] However, contrary to our express direction in *Cerny*, the district court failed to make specific findings in support of its § 25-1315(1) determination. "When a trial court concludes that entry of judgment under § 25-1315(1) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order. . . . It is difficult to review the trial court's exercise of discretion when the court does not explain its reasoning."[15]

Thus, without specific findings, we must review the record for some indication of a "'pressing, exceptional need for immediate appellate intervention, or grave injustice of the sort

---

[12] See *id.*

[13] See *id.*

[14] *Murphy v. Brown*, 15 Neb. App. 914, 738 N.W.2d 466 (2007).

[15] *Cerny, supra* note 3, 273 Neb. at 811, 733 N.W.2d at 887.

remediable only by allowing an appeal to be taken forthwith, or dire hardship of a unique kind.'"[16] We further take particular notice of the allegations contained in Castellar's request for certification.[17] But rather than demonstrating that certification was appropriate, Castellar's allegations affirmatively show that it was not.

In its request for certification of a final judgment, Castellar alleged that its 11 causes of action involved the "same parties, similar issues, and related facts." As we explained in *Cerny*, the presence of overlapping claims counsels against certification, not in favor of it.[18] Moreover, all of the claims stated in Castellar's amended complaint appear to arise from the same underlying event—the AMP parties' alleged breach of various promises to form a "global business" with Castellar. And Castellar alleged that the advisory agreement was a step toward "transition[ing] into a proper hedge fund advisory contract and global business partnership." Thus, it appears that Castellar's claims involve considerable overlap. When the dismissed and surviving claims are factually and legally overlapping or closely related, fragmentation of the case is to be avoided except in "'"unusual and compelling circumstances."'"[19]

We recognize that the district court's dismissal of Castellar's claim for breach of the advisory agreement may cause Castellar to incur considerable expense in litigating the claim in New South Wales. But there is no indication of any grave injustice or dire hardship that would result from requiring Castellar to raise this issue in an appeal from a final determination of the case. Castellar's claim of a New South

---

[16] *Id.* at 810, 733 N.W.2d at 887, quoting *Spiegel v. Trustees of Tufts College*, 843 F.2d 38 (1st Cir. 1988).

[17] See *Cerny, supra* note 3.

[18] See *id.*

[19] *Id*. at 813, 733 N.W.2d at 888-89, quoting *Long v. Wickett*, 50 Mass. App. 380, 737 N.E.2d 885 (2000).

Wales statute of limitations is a mere allegation with no evidentiary support.

The law disfavors piecemeal appeals, and multiple appeals interfere with efficient judicial administration and impose on the parties costs and risks associated with protracted litigation.[20] Because all of Castellar's claims are interrelated and the same parties remain involved in the pending litigation, we conclude that the district court abused its discretion in certifying a final judgment pursuant to § 25-1315(1).

## CONCLUSION

Without specific findings to guide our review of the district court's § 25-1315(1) determination, we find no basis to conclude that this was the "unusual case" warranting the proliferation of piecemeal appeals. And the interrelatedness of Castellar's claims counsels against certification. We therefore conclude that the district court abused its discretion in certifying the dismissal of Castellar's claim for breach of the advisory agreement as a final judgment. Thus, we vacate the provision of the court's May 15, 2014, order purporting to certify a final judgment and dismiss the appeal for lack of jurisdiction.

ORDER VACATED IN PART, AND APPEAL DISMISSED.

---

[20] See, *Cerny, supra* note 3; *Halac v. Girton*, 17 Neb. App. 505, 766 N.W.2d 418 (2009).