STEVEN L. ARCHBOLD, SUCCESSOR PERSONAL REPRESENTATIVE OF THE ESTATE OF ALPHONS REIFENRATH, DECEASED, APPELLEE, V. JOSEPH F. REIFENRATH AND DONNA REIFENRATH, APPELLANTS.

744 N.W.2d 701

Filed January 25, 2008.    No. S-06-1124.

David A. Domina and Claudia L. Stringfield-Johnson, of Domina Law Group, P.C., L.L.O., for appellants.

Thomas H. DeLay, of Jewell, Collins, DeLay & Flood, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Steven L. Archbold, successor personal representative of the estate of Alphons Reifenrath, brought the present action against Joseph F. Reifenrath and his wife, Donna Reifenrath (collectively the appellants), to recover assets formerly belonging to Alphons. The district court found that Joseph, while acting as Alphons' power of attorney (POA), did not have authorization to make substantially gratuitous transfers of Alphons' assets to himself and members of his family. The district court further found that any oral authorization by Alphons for Joseph to make such transfers was the result of undue influence exercised by Joseph. The appellants now appeal.

## BACKGROUND

Alphons was diagnosed with terminal cancer in August 2002 and died shortly thereafter on November 1, 2002. Alphons was a bachelor and was survived by one brother, Joseph; one sister, Angela Gubbels (Angela); and his nieces and nephews. Alphons was preceded in death by his parents and seven sisters, including a sister named "Beatrice Walter" (Beatrice). Alphons had lived alone on his farm for a number of years prior to his diagnosis. Following his diagnosis, however, Alphons resided in a nursing home until his death.

During his life, Alphons owned various parcels of real estate, some of which he retained in his name as sole owner and some of which he sold to Joseph. In addition, prior to September 2002, Alphons owned various bank accounts and certificates of deposit. The account number, owner, title of the account, and ending balance for the bank accounts at issue, as well as the certificate number, owner, amount, and payee or payable-on-death (POD) beneficiary for the relevant certificates of deposit are as follows:

| Account No. | Owner | Titled As | Closing Balance |
|---|---|---|---|
| 491705 | Alphons | Alphons or Beatrice | $2,446.93 |
| 738536499 | Alphons | Alphons or Angela | 5,100.49 |

| Certificate No. | Owner | Amount | Payee |
|---|---|---|---|
| 15466 | Alphons | $ 6,700.30 | POD Angela |
| 32064 | Alphons or Beatrice | 45,000.00 | Survivor |
| 15630 | Alphons | 65,397.53 | POD Angela and Beatrice |
| 2108332046 | Alphons and Angela | 50,040.75 | Survivor |

Angela testified by deposition that prior to his death, Alphons informed her that she was the beneficiary of a number of certificates of deposit and checking accounts and that upon his death, she was to distribute the proceeds to Alphons' estate for distribution among the siblings.

Around the time Alphons was admitted into the nursing home, Joseph contacted his attorney, Alice Rokahr, who drafted a durable POA which was signed by Alphons. Under the POA, Joseph was appointed Alphons' attorney in fact and was given plenary powers as well as all the specific and general powers set forth in the Nebraska Short Form Act (the Act), Neb. Rev. Stat. § 49-1501 et seq. (Reissue 1998). At trial, Rokahr testified, over a continuing objection by Archbold's attorney on the basis of parol evidence, that she explained to Alphons that the document would give Joseph the right to stand in Alphons' shoes, that Joseph could do anything Alphons could do, and

that "this was a full power with no limits." In admitting this testimony, the court stated:

> I'm inclined to let it come in. But as far as the fact finding of whether [Alphons'] understanding varies with what he signed, or whether I believe it, that's another matter. So I'm going to let it come in. The objection is overruled. It's going to be for the weight that I place on it.

Rokahr also prepared an updated will for Alphons, which was signed by Alphons and witnessed on September 17, 2002. Joseph was appointed personal representative of the will. In the will, Alphons directed that any property in his name and another as joint tenant or beneficiary at the time of his death be paid to such joint owner or beneficiary and that the personal representative make no claim thereto. Alphons directed that all certificates of deposit be cashed by the personal representative and be divided equally among his beneficiaries. He directed that the personal representative sell Alphons' real estate, preferably to a family member, and distribute the proceeds in equal parts to his residuary beneficiaries. Alphons also directed that his personal property be distributed as the personal representative saw fit and that his farm machinery and equipment be sold and the proceeds be equally distributed to his residuary beneficiaries. Alphons left the residue and remainder of his estate, including all cash, equally to Joseph and the children of five of his sisters.

Following his appointment as Alphons' attorney in fact, Joseph deleted the names of Alphons' sisters as joint owners or POD beneficiaries on a number of Alphons' deposit accounts and certificates of deposit, and inserted his own name as either the joint owner or POD beneficiary for nearly all those assets. Following Alphons' death, Joseph closed the two deposit accounts for which he had substituted himself as joint owner and deposited the balances into his personal accounts. The inventory filed by Joseph as personal representative identified the account balances as "Jointly Owned Property," with Joseph as the surviving joint owner. Prior to Alphons' death, Joseph also drew checks upon Alphons' deposit accounts in the amounts of $65,000, $15,000, $10,000, and $1,000. These checks were all payable to Donna.

With regard to Alphons' certificates of deposit, certificate 15466 was redeemed by Joseph in October 2002, certificate 32064 was cashed in December 2002, and certificate 2108332046 was redeemed in December 2002. The proceeds of these certificates were deposited into accounts owned by either Joseph or the appellants jointly. With regard to certificate 15466, Joseph testified that he used the proceeds from the certificate to pay his personal debt that had accumulated from working with Alphons over the years. With regard to certificate 2108332046, Joseph claimed that he used the proceeds of the certificate to pay a personal debt to reimburse expenses he had accrued while farming with Alphons.

In addition, while acting as attorney in fact, Joseph participated in the sale of Alphons' farm to Joseph's son and daughter-in-law for $115,000. Joseph testified that Alphons agreed to sell his farm to Joseph's son. Joseph drafted the deed, as well as a note for the $115,000 consideration. Joseph claimed that Alphons orally authorized the drafting of the note. The payees of the note were identified as Alphons or Joseph or Donna. The appellants received the payoff of the note in full on July 14, 2004. That amount was not paid into the estate; rather, it was used for the appellants' sole use and benefit.

Archbold, successor personal representative of Alphons' estate, filed suit against the appellants. Archbold alleged that Joseph abused his fiduciary duty as Alphons' attorney in fact by making gifts to himself and his family. Archbold alleged that the appellants wrongfully retained funds from Alphons' estate, commingled funds from Alphons or Alphons' estate, paid personal debts with those funds, and purchased property with those funds. Archbold further alleged that Joseph exercised undue influence over Alphons and that the appellants wrongfully took property from Alphons and Alphons' estate.

The principal issue before the district court was the question of whether Joseph, as attorney in fact for Alphons, was authorized to make substantial gifts of Alphons' funds to himself and his family. The district court found in part that the principles of agency apply to the construction of a POA and supplement the Act. The district court concluded that neither the POA in this case, nor the general powers and plenary power of the

Act, expressly granted Joseph the authority and power to make substantial gifts of Alphons' property and funds to himself and his family, including Donna. The district court found that there was clear and convincing evidence of constructive fraud. The district court further found that there was clear and convincing evidence of Joseph's motive and intent to unduly influence Alphons during the last days of Alphons' life. The district court found that if Alphons actually gave oral authorization for Joseph to insert his name as joint payee or POD beneficiary on the above-noted deposit accounts and certificates of deposit and authorized the drafting of the promissory note payable to Alphons and the appellants as joint tenants, such authority was the product and result of undue influence exercised by Joseph upon Alphons. The court held that the amounts taken from Alphons' deposit accounts and certificates of deposit accounts, which are noted above, should be returned to Alphons' estate, as well as the proceeds from the sale of Alphons' farm. The court found that based upon the evidence, no reasonable controversy existed as to the amount of damages or the time when the cause of action arose, i.e., the time when Joseph received the moneys and held that prejudgment interest should be assessed against the appellants.

The district court also addressed in its order the admissibility of Rokahr's testimony, which was objected to at trial on the basis of the parol evidence rule. In its order, the district court found that although the objection was overruled, if the testimony was offered as proof of the matter stated, then such expression of intent was inadmissible under the parol evidence rule.

## ASSIGNMENTS OF ERROR

The appellants contend, renumbered, that the district court erred (1) in finding Joseph unduly influenced Alphons to make certain gifts or transfers of certificates of deposit, (2) in setting aside the promissory note payable to the appellants, (3) in deciding that the Act does not eliminate the need for express authority for an attorney in fact to convey assets to himself, (4) in refusing to admit Rokahr's testimony, and (5) in awarding Archbold prejudgment interest.

## STANDARD OF REVIEW

■ In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, however, that where credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[1]

## ANALYSIS

### Joseph Was Not Authorized to Make Substantially Gratuitous Transfers of Alphons' Property to Himself and Members of His Family

The appellants' first three assignments of error can be consolidated into one broad question: Does the plenary power in the Act change the rule with regard to the fiduciary duty that an agent owes to the principal?

■ We have defined a power of attorney as "'an instrument in writing authorizing another to act as one's agent.'"[2] An agent holding a power of attorney is termed an "attorney in fact" as distinguished from an attorney at law.[3] An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent and, further, resulting from another's consent to so act.[4] An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal, to act solely for the principal's benefit in all matters connected with the agency, and to adhere faithfully to the instructions of the principal, even at the expense of the agent's own interest.[5]

---

[1] *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989).

[2] *Id.* at 858, 448 N.W.2d at 581. See, also, *First Colony Life Ins. Co. v. Gerdes*, 267 Neb. 632, 676 N.W.2d 58 (2004).

[3] *First Colony Life Ins. Co. v. Gerdes, supra* note 2; *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003).

[4] *First Colony Life Ins. Co. v. Gerdes, supra* note 2.

[5] *Id.*

■ As stated in *Fletcher v. Mathew*,[6] because of the agency relationship created by a power of attorney, the authority and duties of an attorney in fact are governed by the principles of the law of agency, including the prohibition against an agent profiting in transactions in which the agent represents the principal. We explained in *Crosby v. Luehrs*[7] that no gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument and there is shown a clear intent on the part of the principal to make such a gift. Thus, absent an express intention, an agent may not use his or her position for the agent's or a third party's benefit in a substantially gratuitous transfer.[8] An attorney in fact, under the duty of loyalty, always has the obligation to act in the best interest of the principal unless the principal voluntarily consents to the attorney in fact engaging in an interested transaction after full disclosure.[9]

Accordingly, we have determined that in situations involving an attorney in fact,

> a prima facie case of fraud is established if the plaintiff shows that the defendant held the principal's power of attorney that the defendant, using the power of attorney, made a gift to himself or herself. . . . The burden of going forward under such circumstances falls upon the defendant to establish by clear and convincing evidence that the transaction was made pursuant to power expressly granted in the power of attorney document and made pursuant to the clear intent of the donor.[10]

In *First Colony Life Ins. Co. v. Gerdes*,[11] we stated that in situations involving an attorney in fact, a principal's purported oral authorization is ineffective as proof of the principal's intent

---

[6] *Fletcher v. Mathew, supra* note 1.

[7] *Crosby v. Luehrs, supra* note 3.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 836, 669 N.W.2d at 645. See, also, *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992); *Fletcher v. Mathew, supra* note 1.

[11] *First Colony Life Ins. Co. v. Gerdes, supra* note 2.

to make a substantially gratuitous transfer. We explained that this rule "was enunciated out of concern for potential abuse and fraud with durable powers of attorney and has been limited in application to cases in which the attorney in fact, or someone in relationship to the attorney in fact, stood to benefit at the principal's expense."[12] The appellants rely on Alphons' alleged oral authorizations and the POA as Joseph's authority for making gifts to himself and members of his immediate family. Because Alphons' alleged oral authorizations are ineffective as proof of Alphons' intent, the POA in this case would have to provide Joseph with the express authority to make such gratuitous transfers.

The appellants contend that the POA in this case, which was patterned after the Act, conferred plenary power upon Joseph. The appellants assert that included in that power was the authority to personally acquire property from Alphons and to convey Alphons' property to any person, including Joseph and members of his family. The appellants further assert that nothing in the Act limits an attorney in fact's authority to transfer property to himself or herself or family.

Powers of attorney are by necessity strictly construed, and broad encompassing grants of power are to be discounted.[13] The POA in this case provides in relevant part:

1. **Durability**: By this instrument, I create and establish a durable and general Power of Attorney upon the following principals:

a. The authority and power within the scope of this instrument derive their validity from and compromise [sic] and constitute a durable Power of Attorney under the provisions and within the meaning of Section 30-2664 through 2672, reissue revised statutes of Nebraska, 1995, as amended, and all other applicable provisions of the Nebraska Uniform Durable Power of Attorney Act, as amended, and the Nebraska Probate Code, as amended; and the short form expressions herein used have the meanings ascribed by and are respectively subject to application,

---

[12] *Id.* at 640, 676 N.W.2d at 65.

[13] *Fletcher v. Mathew, supra* note 1.

construction, enforcement and interpretation as prescribed under the provisions of Sections 49-1501 through 1561, reissue revised statutes of Nebraska, 1998, as amended, and all other applicable provisions of the Nebraska Short Form Act. . . .

2. **Enumerated Powers:** By this instrument, I confer upon and grant to my power of attorney without limitation to the generality, Plenary Power exercisable in the absolute judgment and discretion of my Agent. This shall include, but not be limited to the following authority, to wit: . . . .

The POA goes on to specify all those general and specific powers and authorities contained in the Act. Included is the specific authority for dispositions,[14] the specific authority for documents,[15] the specific authority for investments,[16] the general power for bank and financial transactions,[17] and the general power for real estate.[18]

The Act defines a general power as "any one of the separate general aggregations of related authorities and powers defined by any short form expression specified by the . . . Act."[19] Plenary power is defined by the Act as "the general and universal aggregation of authorities and powers defined by the short form expression specified by the . . . Act."[20] The Act further provides that plenary power "shall mean that the principal generally and universally authorizes and empowers the agent to have and to exercise collectively or singly and concurrently or consecutively any one or more in combination or otherwise of each" of the general power.[21] The Act provides that plenary power shall mean that

---

[14] See § 49-1532.

[15] See § 49-1533.

[16] See § 49-1537.

[17] See § 49-1545.

[18] See § 49-1554.

[19] § 49-1512.

[20] § 49-1515.

[21] § 49-1557.

the principal generally and universally authorizes and empowers the agent to act as and to be an alter ego of the principal as to anything and everything not otherwise fully within the scope of such enumerated general powers and to the full extent permissible and practicable for any person as an agent to do or omit to do for, in place of, or on behalf of another person as a principal and without reservation or restriction as to any circumstance, condition, interest, matter, property, question, or transaction as the principal might do or omit to do in person and while competent.[22]

The appellants argue that under the plenary power bestowed upon Joseph, Joseph was expressly provided the authorization to make substantially gratuitous transfers of Alphons' property to himself and his family. The appellants misconstrue the breadth of plenary power under the Act. Section 49-1557 provides that plenary power authorizes the agent to act as the principal's alter ego. Notably, § 49-1557 limits plenary power to those acts an agent is otherwise authorized to do as an agent. As explained above, our case law on the subject has made clear that an agent is not authorized to make substantially gratuitous transfers to himself or his family absent an express provision in the POA. Because the POA in this case does not contain a specific authorization for the making of gratuitous transfers by Joseph to himself or his immediate family, we determine that Joseph has failed to meet his burden. We, therefore, affirm the district court's findings. Specifically, we determine that Joseph was not authorized to transfer the funds from Alphons' bank accounts to himself or Donna. We further determine that Joseph was not authorized to retain the proceeds from the certificates of deposit noted above. As for the real estate sold to Joseph's son, Alphons directed in his will that his real estate be sold, preferably to a family member. Joseph did that by selling the property to his son. We determine, however, that the proceeds of that sale should not have been retained by the appellants. Rather, the proceeds should have been remitted to Alphons' estate.

---

[22] *Id.* (emphasis supplied).

### ROKAHR'S TESTIMONY

We have examined the appellants' fourth assignment of error with regard to Rokahr's testimony, and we find this assignment of error to be without merit.

### PREJUDGMENT INTEREST

■ In their final assignment of error, the appellants contend that the district court erred in awarding prejudgment interest. Whether prejudgment interest should be awarded is reviewed de novo on appeal.[23]

■ Prejudgment interest may be awarded only as provided in Neb. Rev. Stat. § 45-103.02(2) (Reissue 2004).[24] Under § 45-103.02(2), prejudgment interest is recoverable only when the claim is liquidated, that is, when there is no reasonable controversy as to the plaintiff's right to recover and the amount of such recovery. This determination requires a two-pronged inquiry. There must be no dispute as to the amount due and to the plaintiff's right to recover.[25]

The district court determined that no reasonable controversy existed as to the amount of damages. The appellants do not dispute this determination. The appellants do, however, argue that a reasonable controversy existed regarding Joseph's rights to retain Alphons' assets. We disagree. Based on our analysis above, we conclude that a reasonable controversy did not exist as to Joseph's rights to retain Alphons' assets. We, therefore, affirm the district court's judgment on this issue.

### CONCLUSION

For the reasons discussed, we affirm the judgment of the district court.

AFFIRMED.

---

[23] *Travelers Indemnity Co. v. International Nutrition*, 273 Neb. 943, 734 N.W.2d 719 (2007).

[24] See *id.*

[25] See *id.*