Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/08/2016 09:06 AM CDT

Elaine Cisneros, appellee and cross-appellant,
v. Gregory G. Graham, appellant
and cross-appellee.

___ N.W.2d ___

Filed July 8, 2016.    No. S-15-392.

1. **Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion.
2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
3. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.
4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
5. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.
6. **Summary Judgment.** On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists.
7. ____. Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
8. **Summary Judgment: Proof.** A party moving for summary judgment makes a prima facie case for summary judgment by producing enough

evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

9. ____: ____. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

10. **Statutes: Appeal and Error.** The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

11. ____: ____. When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.

12. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

13. **Ratification.** Whether there has been a ratification is ultimately and ordinarily a question of fact.

14. **Ratification: Proof.** Because ratification is an affirmative defense, the burden of proving ratification rests on the party asserting it.

15. **Ratification: Agents.** Ratification of an agent's unauthorized acts may be made by overt action or inferred from silence or inaction.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Norman Denenberg for appellant.

Edward W. Hasenjager for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, and KELCH, JJ.

MILLER-LERMAN, J.

### NATURE OF CASE

In this case, we must determine the propriety of the actions of an agent whose power of attorney is subject to the Nebraska Uniform Power of Attorney Act, Neb. Rev. Stat. § 30-4001

et seq. (Cum. Supp. 2014) (Nebraska UPOAA). On summary judgment, the district court for Douglas County found that the agent, Gregory G. Graham (Graham), whose principal was his aunt Hilda Graham (Hilda), committed constructive fraud. The district court entered judgment in favor of Elaine Cisneros in an amount she would have received as beneficiary under a certain certificate of deposit and granted other relief. The district court later denied Graham's motion to alter or amend the judgment. We affirm.

STATEMENT OF FACTS

In June 2013, Hilda was diagnosed with terminal pancreatic cancer and "was given only a few months to live." Hilda was the owner of a certificate of deposit (CD) in the amount of $59,665.27 which she opened on December 22, 2008. From the time Hilda opened the CD until it was cashed out, Hilda changed the payable-on-death beneficiary a number of times. On July 25, 2013, Hilda changed the beneficiary to Cisneros, and Cisneros was the named beneficiary when the CD was subsequently cashed, as explained below.

On July 16, 2013, Hilda appointed Graham as her power of attorney. Graham was the nephew of Hilda's deceased husband. The power of attorney provided:

A. POWER OF ATTO[R]NEY FOR HANDLING PRINCIPAL'S BUSINESS AFFAIRS AND MANAGING PRINCIPAL'S ASSETS: Without in any way limiting or restricting the generality of the foregoing, but in furtherance thereof, and in partial enumeration only, of the powers thereby vested in my said Attorney-in-Fact, I hereby give and grant unto my said Attorney-in-Fact full power and authority, from time to time, for me and in my name, place and stead, and for my use, and in my said Attorney-in-Fact's sole discretion:

. . . .

4. To deposit or withdraw any money or credits in any bank or savings and loan company or any depository

or investment or financial business of any kind, and to sign, endorse, execute or renew any checks, withdrawals, deposits, promissory notes, bonds, bills of exchange or evidences of indebtedness and to waive notice of demand and protest and to transact and perform any and all other banking or financial business and affairs of any kind whatsoever; including the power to change the beneficiaries of any financial investments.

. . . .

6. To purchase, sell, transfer, assign, hypothecate, redeem, exchange, waive priority, or deal in any way with any notes, mortgages, stocks, bonds or securities or investments of any kind or nature whatsoever, and to receive and receipt for any and all income or dividends therefrom and to vote or to execute proxies for voting any and all stock.

While she was alive, Hilda had a checking account, and on August 12, 2013, Graham and Hilda signed an account agreement which designated Graham as the co-owner of that account with a right of survivorship. On August 19, the checking account had a balance of $20,858.95. On August 22, Graham used the power of attorney to cash the CD and deposit the proceeds into the checking account. On August 22, the checking account had a balance of $80,524.22. Cisneros was the named beneficiary of the CD when it was cashed. On September 5, Hilda died at home. When Hilda died, the balance in the checking account became Graham's by operation of law.

On January 15, 2014, Cisneros filed her complaint alleging that Graham's actions of cashing the CD and depositing the proceeds into the checking account "were unlawful" and that he "converted the proceeds of the CD to his own use and benefit causing damage to [Cisneros] in the amount of $60,000.00 with interest payable under the CD." Cisneros sought damages, interest, attorney fees, and costs. On July 8, Cisneros filed a motion for summary judgment. A hearing was held

at which evidence was received. The parties proceeded on a theory of constructive fraud.

Graham testified in his deposition that Hilda had orally instructed him to cash the CD and deposit the proceeds into the joint checking account in case more money was needed to pay for her care outside the home. The evidence showed that Hilda's hospice care was paid for by Medicare or supplemental insurance. A home care business began caring for Hilda at her home in the latter part of August 2013 for the several last days of Hilda's life. The services provided by the home care business were not paid for by Medicare, but instead had to be paid for by Hilda. On September 15, Graham paid $1,464 from the checking account to the home care business. None of the proceeds from the CD were needed to pay Hilda's bills.

In an affidavit that was received into evidence, Graham stated that on the same day that he deposited the proceeds of the CD into the joint checking account, Graham went to Hilda's house, told her about the transaction, and gave her the receipt for the transaction. Graham's affidavit stated that "[a]fter Hilda . . . knew the transaction was completed, she was more calm, and less frustrated and agitated." Graham's affidavit further stated that the deposit of the proceeds of the CD was recorded in Hilda's check register in Hilda's handwriting. Although Graham offered the check register as an exhibit, it was not received into evidence at the hearing on the motion for summary judgment.

On January 29, 2015, the district court filed an order in which it granted Cisneros' motion for summary judgment. The court noted that the Nebraska UPOAA became effective on January 1, 2013, and that because the power of attorney was executed on July 16, the Nebraska UPOAA applied to this case. The court determined that relevant pre-2013 case law, such as *Archbold v. Reifenrath*, 274 Neb. 894, 744 N.W.2d 701 (2008), and *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003), was still good law because their principles were consistent with the Nebraska UPOAA.

The district court determined that § 30-4024(2) applied. Section 30-4024(2) provides:

> Notwithstanding a grant of authority to do an act described in subsection (1) of this section, unless the power of attorney otherwise provides, an agent that is not an ancestor, spouse, or issue of the principal, may not exercise authority under a power of attorney to create in the agent, or in an individual to whom the agent owes a legal obligation of support, an interest in the principal's property, whether by gift, right of survivorship, beneficiary designation, disclaimer, or otherwise.

The court stated that because Graham was the nephew or stepnephew of Hilda, he was not an "'ancestor, spouse, or issue'" of Hilda, and that therefore, pursuant to § 30-4024(2), Graham was required to have express authority under the power of attorney to give himself an interest in Hilda's property. The court determined that the power of attorney did not contain such express authority. Accordingly, the court determined that Graham's actions were fraudulent under a theory of constructive fraud, and it granted Cisneros' motion for summary judgment. The court awarded Cisneros $59,665.27, prejudgment interest, and costs, but it denied Cisneros' request for attorney fees.

On February 2, 2015, Graham filed a "Motion for New Trial," which the district court treated as a motion to alter or amend judgment. Finding no error in its summary judgment ruling, the court denied Graham's motion on April 8.

Graham appeals. Cisneros cross-appeals.

## ASSIGNMENTS OF ERROR

Graham generally claims, restated, that the district court erred when it granted summary judgment in favor of Cisneros and denied his motion to alter or amend the judgment. Graham specifically claims that the court erred when it (1) failed to determine that Graham had express authority granted in the power of attorney to cash the CD and deposit the proceeds

into the checking account he co-owned with Hilda, (2) failed to determine that § 30-4014(4) allowed a benefit to himself as agent, and (3) failed to determine that his actions were ratified by Hilda, which ratification made the deposit transaction legal and binding.

On cross-appeal, Cisneros claims that the district court erred when it did not award attorney fees to her under § 30-4017.

## STANDARDS OF REVIEW

[1] An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014).

[2,3] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Sulu v. Magana*, 293 Neb. 148, 879 N.W.2d 674 (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

[4] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

[5] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013).

## ANALYSIS

Graham appeals from the district court's ruling denying his motion to alter or amend the judgment. Because our

decision ultimately depends on the correctness of the district court's grant of the underlying summary judgment, we discuss the case based on legal standards applicable to summary judgment.

*Appeal: Graham Lacked Authority to
Deposit the Proceeds From the CD
Into the Checking Account He
Co-Owned With Hilda.*

Graham generally contends that the district court erred when it granted Cisneros' motion for summary judgment based upon its determination that Graham committed constructive fraud when he cashed the CD and deposited the proceeds into the checking account with right of survivorship that he co-owned with Hilda. Graham specifically argues that he did not commit constructive fraud because pursuant the power of attorney, he had the authority to cash the CD and to deposit the proceeds into the checking account. We find no merit to Graham's contentions.

[6,7] The principles regarding summary judgment are well established. On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists. *Phillips v. Liberty Mut. Ins. Co.*, 293 Neb. 123, 876 N.W.2d 361 (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Sulu v. Magana, supra*. Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Phillips v. Liberty Mut. Ins. Co., supra*.

[8,9] A party moving for summary judgment makes a prima facie case for summary judgment by producing enough

evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Id*. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

With respect to constructive fraud, prior to the enactment of the Nebraska UPOAA, we stated:

> Constructive fraud generally arises from a breach of duty arising out of a fiduciary or confidential relationship. . . . Constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud-feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. . . . Constructive fraud is implied by law from the nature of the transaction itself. . . . The existence or nonexistence of an actual purpose to defraud does not enter as an essential factor in determining the question; the law regards the transaction as fraudulent per se. . . . Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

*Crosby v. Luehrs*, 266 Neb. 827, 835-36, 669 N.W.2d 635, 644-45 (2003) (citations omitted).

With respect to fraud in the context of a power of attorney, we have held:

> "[A] prima facie case of fraud is established if the plaintiff shows that the defendant held the principal's power of attorney and that the defendant, using the power of attorney, made a gift to himself or herself. . . . The burden of going forward under such circumstances falls upon the defendant to establish by clear and convincing evidence that the transaction was made pursuant to power expressly granted in the power of attorney document and made pursuant to the clear intent of the donor."

*Litherland v. Jurgens*, 291 Neb. 775, 782-83, 869 N.W.2d 92, 97 (2015), quoting *Crosby v. Luehrs, supra*.

In this case, the undisputed evidence shows that Graham was made Hilda's attorney in fact by a power of attorney dated July 16, 2013. The evidence also shows that on August 22, Graham purportedly using the power of attorney cashed the CD and deposited the proceeds into a checking account with right of survivorship that he co-owned with Hilda. By depositing the proceeds in this checking account, Graham created in himself an interest in Hilda's property.

In order to determine whether Graham had the authority as Hilda's attorney in fact to create in himself an interest in Hilda's property, we must look to the applicable law and the language of the power of attorney. With respect to the law that governs the current case, the Legislature recently enacted the Nebraska UPOAA, which was modeled after the Uniform Power of Attorney Act (2006) (Uniform POAA), § 5B-101 et seq., 8 (part III) U.L.A. 290 (2013). The drafters of the Uniform POAA stated that the act "'provides a simple way for people to deal with their property by providing a power of attorney in case of future incapacity. While chiefly a set of default rules, the [Uniform POAA] also contains safeguards for the protection of an incapacitated principal.'" Ronald R. Volkmer, *Nebraska's Real Property Transfer on Death Act and Power of Attorney Act: A New Era Begins*, 46 Creighton L. Rev. 499, 505 (2013).

The Nebraska UPOAA became effective on January 1, 2013, and § 30-4045(1) of the Nebraska UPOAA states that "[t]he act applies to a power of attorney created before, on, or after January 1, 2013." The power of attorney at issue in this case is dated July 16, 2013, and therefore, the Nebraska UPOAA applies to this case. We note Graham contends that any case law regarding powers of attorney which was decided prior to the effective date of the Nebraska UPOAA has been rendered irrelevant by the enactment of the Nebraska UPOAA and that therefore, such case law does not apply to this case. We do

not agree with Graham's complete rejection of prior case law, and instead we determine that to the extent such case law is consistent with the Nebraska UPOAA, prior case law is still relevant and may be considered in our analysis.

Pursuant to the Nebraska UPOAA, "power of attorney" is defined as "a writing or other record that grants authority to an agent to act in the place of the principal, whether or not the term power of attorney is used." § 30-4002(8). "Principal" is defined as "an individual who grants authority to an agent in a power of attorney." § 30-4002(10). "Agent" is defined in part as "a person granted authority to act for a principal under a power of attorney, whether denominated an agent, attorney in fact, or otherwise." § 30-4002(1). "Property" is defined as "anything that may be the subject of ownership, whether real or personal, legal or equitable, or any interest or right therein." § 30-4002(11).

The law recognizes the "manifold opportunities and temptations for self-dealing that are opened up for persons holding general powers of attorney." *Estate of Casey v. C.I.R.*, 948 F.2d 895, 898 (4th Cir. 1991). Thus, with respect to an agent giving himself or herself an interest in the principal's property and to safeguard the principal, § 30-4024(2) of the Nebraska UPOAA provides in part that

> unless the power of attorney otherwise provides, an agent that is not an ancestor, spouse, or issue of the principal, may not exercise authority under a power of attorney to create in the agent, or in an individual to whom the agent owes a legal obligation of support, an interest in the principal's property, whether by gift, right of survivorship, beneficiary designation, disclaimer, or otherwise.

See, also, § 30-4041 (providing form reflecting power of attorney statutes).

[10,11] The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words

which are plain, direct, and unambiguous. *In re Estate of Alberts*, 293 Neb. 1, 875 N.W.2d 427 (2016). When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id*.

The plain language of § 30-4024(2) provides that in order for an agent who is not the "ancestor, spouse, or issue of the principal" to use the power of attorney to create in himself or herself an interest in the principal's property, the agent must have express authority from the principal in the power of attorney. If an agent who is not the "ancestor, spouse, or issue of the principal" does not have express authority from the principal in the power of attorney, then, pursuant to § 30-4024(2), such an agent does not have the authority to create in the agent an interest in the principal's property. In other words, § 30-4024(2)

> distinguishes between grants of power to an agent who is an ancestor, the spouse, or issue of the principal versus an agent who is *not* in those categories. Under subsection (2) [of § 30-4024], the agent who is *not* in the category of ancestor, spouse, or issue must be granted explicit authority to create in the agent, or in a person the agent is legally obligated to support, an interest in the principal's property.

Ronald R. Volkmer, *Nebraska's Real Property Transfer on Death Act and Power of Attorney Act: A New Era Begins*, 46 Creighton L. Rev. 499, 554 (2013).

Section 30-4024(2) of the Nebraska UPOAA is almost identical to § 5B-201(b) of the Uniform POAA, with the main difference being that § 5B-201(b) uses the word "descendant" whereas § 30-4024(2) uses the word "issue." The comment to § 5B-201 of the Uniform POAA reinforces that an agent who is not an ancestor, spouse, or descendent may not make a gift to the agent without express authority from the principal in the power of attorney. The comment provides in part:

[Section 5B-201(b) (equating to § 30-4024(2))] contains an additional safeguard for the principal. It establishes as a default rule that an agent who is not an ancestor, spouse, or descendant of the principal may not exercise authority to create in the agent or in an individual the agent is legally obligated to support, an interest in the principal's property. For example, a non-relative agent with gift making authority could not make a gift to the agent or a dependent of the agent without the principal's express authority in the power of attorney.

Uniform POAA § 5B-201, comment, 8 (part III) U.L.A. at 320 (2013).

In this case, we are only considering the actions of an agent, Graham, who is not the ancestor, spouse, or issue of the principal, Hilda. With respect to agents who are not the ancestor, spouse, or issue of the principal, we believe § 30-4024(2) is in accord with our case law regarding self-dealing decided prior to the effective date of the Nebraska UPOAA. In this regard, in *Archbold v. Reifenrath*, 274 Neb. 894, 901, 744 N.W.2d 701, 707 (2008), we stated that

no gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument and there is shown a clear intent on the part of the principal to make such a gift. Thus, absent an express intention, an agent may not use his or her position for the agent's or a third party's benefit in a substantially gratuitous transfer.

See, also, *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003); *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989) (stating that power of attorney instrument must explicitly authorize attorney in fact to make gifts to himself on behalf of principal). See, also, *Townsend v. U.S.*, 889 F. Supp. 369 (D. Neb. 1995). The statement in *Archbold* quoted above to the effect that a gift made by an agent to himself or herself must be expressly authorized in the instrument is consistent with § 30-4024(2) with respect to agents who are

not the ancestor, spouse, or issue of the principal, and we therefore find this case law to be relevant and applicable to this case.

In this case, as stated above, when Graham deposited the proceeds of the CD into the checking account with right of survivorship that he co-owned with Hilda, he created an interest in himself in Hilda's property. It is undisputed that Graham is not the "ancestor, spouse, or issue" of Hilda. See § 30-4024(2). Therefore, pursuant to § 30-4024(2), Graham needed express authority from Hilda in the power of attorney to deposit the proceeds of the CD into the checking account. We find no such express authority.

The potentially relevant portions of the power of attorney provided:

> A. POWER OF ATTO[R]NEY FOR HANDLING PRINCIPAL'S BUSINESS AFFAIRS AND MANAGING PRINCIPAL'S ASSETS: Without in any way limiting or restricting the generality of the foregoing, but in furtherance thereof, and in partial enumeration only, of the powers thereby vested in my said Attorney-in-Fact, I hereby give and grant unto my said Attorney-in-Fact full power and authority, from time to time, for me and in my name, place and stead, and for my use, and in my said Attorney-in-Fact's sole discretion:
>
> . . . .
>
> 4. To deposit or withdraw any money or credits in any bank or savings and loan company or any depository or investment or financial business of any kind, and to sign, endorse, execute or renew any checks, withdrawals, deposits, promissory notes, bonds, bills of exchange or evidences of indebtedness and to waive notice of demand and protest and to transact and perform any and all other banking or financial business and affairs of any kind whatsoever; including the power to change the beneficiaries of any financial investments.
>
> . . . .

6. To purchase, sell, transfer, assign, hypothecate, redeem, exchange, waive priority, or deal in any way with any notes, mortgages, stocks, bonds or securities or investments of any kind or nature whatsoever, and to receive and receipt for any and all income or dividends therefrom and to vote or to execute proxies for voting any and all stock.

Powers of attorney are strictly construed. See *Fletcher v. Mathew, supra*. Nothing in these sections of the power of attorney, or in any other portion of the power of attorney, provides Graham with the express authority to give himself an interest in Hilda's property. We determine that because such authority is not contained in the power of attorney, and by application of the plain language of § 30-4024(2), Graham did not have authority to give himself an interest in Hilda's property, and specifically, he did not have the authority to deposit the proceeds of the CD into the checking account with right of survivorship that he co-owned with Hilda.

Graham directs our attention to another provision of the Nebraska UPOAA, contending that under § 30-4014(4) of the Nebraska UPOAA, he cannot be found liable for having deposited the proceeds of the CD into the checking account, and that therefore, he was effectively authorized to do so. We do not agree.

Section 30-4014(4) of the Nebraska UPOAA provides: "An agent that acts with care, competence, and diligence for the best interest of the principal is not liable solely because the agent also benefits from the act or has an individual or conflicting interest in relation to the property or affairs of the principal."

Section 30-4014(4) of the Nebraska UPOAA is identical to § 5B-114(d) of the Uniform POAA. This broad provision is explained in the comments to the Uniform POAA. According to the comment to § 5B-114 of the Uniform POAA, "[t]his position is a departure from the traditional common law duty of loyalty which required an agent to act solely for the benefit

of the principal." Uniform POAA § 5B-114, comment, 8 (part III) U.L.A. at 306 (2013). The comment notes that certain state statutes have moved away from a "sole interest" test and recognize that "loyalty to the principal can be compatible with an incidental benefit to the agent." *Id*. Thus, it has been observed that it is apparent that the drafters "justified [their] decision to favor a 'best interest' test over a 'sole interest' test on the ground that most agents under powers of attorney are family members 'who have an inherent conflict of interest with the principal.'" Ronald R. Volkmer, *Nebraska's Real Property Transfer on Death Act and Power of Attorney Act: A New Era Begins*, 46 Creighton L. Rev. 499, 547 (2013).

However, it has also been stated that it should be recognized that

> not all self-dealing transactions fit into the same category. . . . [T]he specter of the agent making gifts to himself or herself raises special concerns that [are] highlighted by other sections of the [Nebraska UPOAA]. [For example, t]here is a difference in degree when comparing a situation in which the agent personally benefits in a contract involving self-dealing with a situation in which the agent personally benefits by receiving a gift of the principal's property. It would seem that subsection (4) [of § 30-4014], when considered in the context of other sections of the [Nebraska UPOAA], although referring to an agent "benefitting" from a relationship with the principal, strikes a proper balance between different types of self-dealing transactions under which the agent "benefits."

Volkmer, *supra* at 547.

We agree with the foregoing reading of the Nebraska UPOAA. Graham's action of depositing the proceeds of the CD into a checking account with right of survivorship he co-owned with Hilda is a situation in which Graham personally benefited by receiving a gift of Hilda's property and is the type of self-dealing prohibited by the Nebraska UPOAA and not permitted under the power of attorney in question.

See § 30-4024(2). And, the action taken by Graham is not the type of permitted situation in which an agent would stand to personally benefit only incidentally from an action taken that is in the best interests of the principal. See § 30-4014(4).

[12] Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible. *Cargill Meat Solutions v. Colfax Cty. Bd. of Equal.*, 290 Neb. 726, 861 N.W.2d 718 (2015). In reading § 30-4014(4) in conjunction with § 30-4024(2), we determine that § 30-4014(4) was not intended to create an exception to the clear language of § 30-4024(2), which provides that an agent who is not the ancestor, spouse, or issue of the principal must have express authority from the principal in the power of attorney in order to create in himself or herself an interest in the principal's property. Graham's argument to the contrary is unavailing.

Because the power of attorney did not provide Graham with express authority to deposit the proceeds of the CD into a checking account with right of survivorship he co-owned with Hilda, we determine that Cisneros demonstrated that she was entitled to judgment as a matter of law, and the burden shifted to Graham to produce evidence preventing judgment.

*Appeal: Graham's Actions Were*
*Not Ratified by Hilda.*

Graham claims that even if he lacked authority under the power of attorney to deposit the proceeds of the CD into the checking account, Hilda nevertheless later ratified his action, and that thus, the district court erred when it granted Cisneros' motion for summary judgment. Even giving Graham the favorable inferences from the evidence, we find no merit to this assignment of error.

[13,14] Describing the concept of ratification, 1 Restatement (Third) of Agency § 4.01 at 304 (2006) provides in part:

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

See, also, *Elting v. Elting*, 288 Neb. 404, 849 N.W.2d 444 (2014). We have stated that whether there has been a ratification is ultimately and ordinarily a question of fact. *Brook Valley Ltd. Part. v. Mutual of Omaha Bank*, 285 Neb. 157, 825 N.W.2d 779 (2013). Because ratification is an affirmative defense, the burden of proving ratification rests on the party asserting it. See *id*.

As an initial matter, we must determine whether ratification is an available defense after adoption of the Nebraska UPOAA against a claim that, under the Nebraska UPOAA and the document at issue, the agent exceeded his or her authority. Generally, "[t]he policy against permitting subversion of the limits on the power of attorney counsels against permitting persons with a power of attorney to invoke other legal principles to exercise powers that are not available under the power of attorney." *Estate of Swanson v. U.S.*, 10 Fed. Appx. 833, 836 (Fed. Cir. 2001). It is for this reason that "'it is assumed that [a document conveying a power of attorney] represents the entire understanding of the parties.'" *Id*., quoting Restatement (Second) of Agency § 34, comment *h*. (1958). Nevertheless, the case law permits ratification of an act beyond the scope of the power of attorney, but, as discussed below, the party asserting ratification must make a strong showing. We see nothing in the Nebraska UPOAA which is inconsistent with the continuation of this principle.

[15] Generally, ratification of an agent's unauthorized acts may be made by overt action or inferred from silence or inaction. See *Brook Valley Ltd. Part. v. Mutual of Omaha*

*Bank, supra*. However, the Restatement (Third) of Agency, *supra*, § 4.01, comment *e*. at 308, provides in part that "[i]f formalities are required for the authorization of an act, the same formalities are required for ratification. In particular, if written authorization would be necessary to bind the principal to a transaction, a writing is necessary to bind the principal to a ratification." It has been stated that ratification "must be by an act of the character required for [the] original authority." *Judd v. Arnold*, 31 Minn. 430, 432, 18 N.W. 151, 151 (1884). Further, it has been noted that "[a] subsequent ratification is, of course, equivalent to a prior authority. But the rule is that the ratification of an unauthorized act must be of the particular mode or form necessary to confer authority to perform it in the first place." *Dunbar v. Farnum & Wife*, 109 Vt. 313, 319, 196 A. 237, 239 (1937). See, also, *Matter of City & County Bank*, 856 S.W.2d 137 (Tenn. App. 1992); *Fulton Co. Fis. Ct. v. Southern Bell T. & T. Co.*, 289 Ky. 159, 158 S.W.2d 437 (1942); *Stammelman v. Interstate Co.*, 112 N.J.L. 342, 170 A. 595 (1934). And the ratification must demonstrate a deliberate choice to be bound. See *Dunbar v. Farnum & Wife, supra*.

It has been stated that "if a statute requires written authority for a particular transaction, oral ratification will not validate an unauthorized act by the agent." 12 Samuel Williston, A Treatise on the Law of Contracts § 35:23 at 412-13 (Richard A. Lord ed., 4th ed. 2012). The case law recognizes this principle, particularly in matters involving real estate where a statute of frauds requires a writing. See, e.g., *Gresser v. Hotzler*, 604 N.W.2d 379, 385-86 (Minn. App. 2000) (determining that because statute of frauds required written authorization for agent to enter into purchase agreement, plaintiff could not claim ratification through conduct or oral statements, stating that "ratification 'must be by an act of the character required for the original authority'" and that "[w]hen the original authorization must be in writing, the ratification must be in writing as well"); *Turnipseed v. Jaje*, 267 Ga. 320, 324, 477

S.E.2d 101, 104 (1996) (stating that "ratification of a real estate contract which was executed by an unauthorized agent must be in writing" and that "[a]n oral ratification will not suffice"). The principle has been applied to the purchase of a water system appurtenant to real estate. See *Dunbar v. Farnum & Wife, supra*. In this case, pursuant to these principles, since Graham's authority to cash the CD and deposit the proceeds was required under a statute, § 30-4024(2), to be expressly in writing, Hilda's ratification was also required to be in a writing.

At the hearing on Cisneros' motion for summary judgment, Graham offered and the court received Graham's affidavit. In his affidavit, Graham stated that on the day he cashed the CD and deposited the proceeds into the checking account, he went to Hilda's house and gave her the receipt for the transaction. He further stated that after Hilda "knew the transaction was completed, she was more calm, and less frustrated and agitated." Graham's affidavit also stated that the deposit of the proceeds was recorded in the check register in Hilda's handwriting, although the check register was not admitted in evidence. Although there is no suggestion that any other evidence could support a ratification, on appeal, Graham asserts that the summary judgment evidence creates a material issue of fact as to whether Hilda ratified Graham's actions.

Even viewing the evidence in the light most favorable to Graham and giving Graham the benefit of all reasonable inferences deducible from the evidence, as we must in reviewing a summary judgment, see *Sulu v. Magana*, 293 Neb. 148, 879 N.W.2d 674 (2016), we determine that Hilda's acts as described by Graham in his affidavit fall short of a sufficient ratification in this circumstance. As stated above, because Graham's authority was required to be in a writing pursuant to § 30-4024(2), a ratification by Hilda was required to be in a writing. Hilda's reaction, as described by Graham in his affidavit, does not show Hilda's express approval of Graham's

actions in a writing. We determine as a matter of law that Graham failed to present evidence of a material issue of fact as to whether Hilda ratified Graham's actions, and thus, we determine that the district court did not err when it granted summary judgment in favor of Cisneros.

*Cross-Appeal: The District Court Did*
*Not Err When It Denied an Award*
*of Attorney Fees to Cisneros.*

On cross-appeal, Cisneros claims that the district court was required to grant her attorney fees under § 30-4017 of the Nebraska UPOAA and erred when it did not do so. We find no merit to Cisneros' assignment of error on cross-appeal.

Section 30-4017(2) of the Nebraska UPOAA allows the court to award attorney fees "as justice may require." Section 30-4017 states:

> An agent that violates the [Nebraska UPOAA] is liable to the principal or the principal's successors in interest for the amount required to:
>
> (1) Restore the value of the principal's property to what it would have been had the violation not occurred; and
>
> (2) In a judicial proceeding involving the administration of a power of attorney, the court, as justice may require, may award costs and expenses, including reasonable attorney's fees to any party, to be paid by another party.

Section 30-4017(2) of the Nebraska UPOAA "departs from the Uniform POAA by adding" that an agent may be held liable for attorney fees as ordered by the court "'as justice may require.'" Ronald R. Volkmer, *Nebraska's Real Property Transfer on Death Act and Power of Attorney Act: A New Era Begins*, 46 Creighton L. Rev. 499, 550 (2013). We believe this departure is an indication that the Legislature intended that the court have discretion in awarding costs and expenses, including attorney fees under § 30-4017(2).

Failing a mandatory award of attorney fees under § 30-4017, Cisneros next looks to Neb. Rev. Stat. § 25-824(4) (Reissue 2008), which provides that "[t]he court shall assess attorney's fees and costs if, upon the motion of any party or the court itself, the court finds that an attorney or party brought or defended an action or any part of an action that was frivolous . . . ."

Cisneros claims attorney fees under § 25-824. With respect to an award of attorney fees pursuant to § 25-824 and Neb. Rev. Stat. § 25-824.01 (Reissue 2008), we have stated:

Attorney fees can be awarded when a party brings a frivolous action that is without rational argument based on law and evidence. We have previously explained that the term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous. Attorney fees for a bad faith action under § 25-824 may also be awarded when the action is filed for purposes of delay or harassment. We have also said that relitigating the same issue between the same parties may amount to bad faith. Finally, any doubt whether a legal position is frivolous or taken in bad faith should be resolved for the party whose legal position is in question.

*White v. Kohout*, 286 Neb. 700, 709-10, 839 N.W.2d 252, 260-61 (2013). Thus, in *White*, we recognized that the attorney fee provision in § 25-824 is discretionary. Cisneros asserts that Graham's defense in this case is frivolous and that therefore, under § 25-824, the district court abused its discretion when it denied her request for attorney fees.

Because discretion is involved, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. See *White v. Kohout, supra*. This case presented the district court with the necessity to construe the new Nebraska UPOAA, and the position of Graham, although unavailing, was neither unreasonable nor frivolous. The district court did not abuse its discretion when it denied Cisneros' motion for attorney fees.

## CONCLUSION

We determine that the district court did not err when it determined that Graham lacked authority under the power of attorney to cash the CD and deposit the proceeds into a checking account with right of survivorship he co-owned with Hilda. We further determine that there was no genuine issue of material fact as to whether Hilda ratified Graham's actions. Accordingly, we determine that the district court did not err when it granted Cisneros' motion for summary judgment and, thereafter, denied Graham's motion to alter or amend the judgment. With respect to Cisneros' cross-appeal, we determine that the district court did not abuse its discretion when it denied an award of attorney fees to Cisneros.

AFFIRMED.

Stacy, J., participating on briefs.