IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PLAINS RADIOLOGY SERVS. V. GOOD SAMARITAN HOSP.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PLAINS RADIOLOGY SERVICES, P.C., A NEBRASKA PROFESSIONAL
CORPORATION, APPELLANT,

V.

GOOD SAMARITAN HOSPITAL, KEARNEY, NEBRASKA,
A NEBRASKA NONPROFIT CORPORATION, APPELLEE.

Filed May 9, 2017.    No. A-16-674.

Appeal from the District Court for Buffalo County: WILLIAM T. WRIGHT, Judge. Affirmed.

Steven D. Davidson, of Baird Holm, L.L.P., for appellant.

Heather B. Veik and Thomas J. Culhane, of Erickson & Sederstrom, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

INBODY, Judge.

## INTRODUCTION

Plains Radiology Services (Plains Radiology) challenges the Buffalo County District Court's order granting summary judgment in favor of Good Samaritan Hospital (Hospital), dismissing the case with prejudice, and denying Plains Radiology's motion for partial summary judgment.

## STATEMENT OF FACTS

Great Plains Radiology and Nuclear Medicine (GPR) is a professional corporation specializing in radiology in Kearney, Nebraska. GPR initially had five doctor shareholders: Robert Heyd, Daniel Fuerst, Richard Jerde, Jeffrey Lee, and Rodney Johnson. GPR partnered with the

- 1 -

Hospital, a nonprofit corporation hospital in Kearney, to establish an outpatient diagnostic imaging center, Kearney Imaging Center (KIC), which joint venture continued until 2009. KIC is located in a medical building attached to the Hospital. KIC offers imaging services such as MRI and PET/CT scans, despite the Hospital's offering of a separate radiology department with x-ray machines, CT and MRI scans, and other imaging capabilities. During the time KIC was operated as a joint venture between the Hospital and GPR, the Hospital had a fee-for-service agreement with KIC where the Hospital could use KIC's equipment as a backup to its own equipment for a fee. Any Hospital patients examined remained patients of the Hospital, even if using KIC's equipment.

In 2008, GPR experienced a split, causing Drs. Lee and Johnson to withdraw as shareholders of GPR and start Plains Radiology, a teleradiology practice in Kearney. Teleradiology is a radiology practice which electronically transmits radiology images to a remote location for reading and interpretation, allowing physicians to provide services to remote healthcare facilities. Drs. Jerde, Heyd, and Fuerst continued with GPR as the exclusive providers of radiology services for the Hospital's radiology department. All five physicians provided services at KIC prior to the split and continued such services at KIC despite the split.

In October 2009, all five physicians sold their interests in KIC to the Hospital and entered into a professional services agreement with the Hospital. The 5-year contract provided that GPR and Plains Radiology would be the exclusive providers of radiology services at KIC, but restricted both GPR and Plains Radiology, including the physicians associated with each, not to "own, manage[,] or operate a [c]ompeting [f]acility" with KIC, specific to the technical component of any imaging services provided there, within Buffalo County, Nebraska. Additionally, the contract provided GPR, Plains Radiology, and the Hospital reciprocal rights to reasonable access of each other's "books and records relating solely to services provided" but only to the extent "reasonably necessary and/or related to any legitimate business purpose of the party receiving such access arising pursuant to [the] [a]greement." Moreover, only good cause would allow for termination of the contract. The contract also required Plains Radiology and GPR to provide coverage for KIC and to be available to perform radiology services pursuant to a coverage schedule, which was divided proportionate to the number of physicians in each practice. In other words, GPR provided coverage for three-fifths of the weeks and Plains Radiology provided coverage for two-fifths of the weeks.

Specifically, the contract provided:

2. Professional Radiology Services

(a) Contractors shall furnish professional radiology supervision of the Studies as required to meet the requirements of applicable payors and/or as consistent with standards of practice in the community. In addition, Contractors shall provide interpretations of the images resulting from the Studies . . . . As requested, each Contractor shall review the Radiology Services provided by such Contractor hereunder and report on the provision of such services for the Facility to Hospital on a quarterly basis or as requested by the Hospital. In addition, each Contractor shall assist Hospital in responding to and developing corrections for any complaints or inquiries of patients concerning Radiology Services furnished by such Contract in the Facility.

(b) Contractors shall provide Radiology Services pursuant to the schedule set forth at Exhibit A (the "Coverage Schedule") for the initial contract year. Contractors shall agree to the Coverage Schedule for each successive contract year within sixty (60) days of the end of the preceding contract year. In the event Contractors fail to agree to the Coverage Schedule for the next contract year, then the Coverage Schedule then attached as Exhibit A shall remain in place as the Coverage Schedule for the next contract year.

(c) Except as required by law or by the terms of this Agreement, Contractors shall have the exclusive right to furnish Radiology Services within the Facility during the term of this Agreement; provided, however, that radiology and diagnostic imaging procedures and ancillary services provided elsewhere in the Department or the Hospital (i.e. to any Hospital patients who do not receive imaging services at the Facility) shall not be subject to the exclusivity requirements of this Agreement. Each Contractor acknowledges and agrees that Hospital may, in the future, enter into an exclusive agreement with either Contractor, or with another provider, for the provision of professional radiology services in the Department, outside of the Facility (a "Hospital Exclusive Agreement"), as long as the Hospital Exclusive Agreement does not interfere with the right of the Contractor and its Physicians to provide exclusive Radiology Services in the Facility in accordance with this Agreement.

. . . .

21. General Provisions

. . . .

(p) *Access to Records; Confidentiality*. Each Contractor agrees to provide Hospital reasonable access to its books and records relating solely to services provided pursuant to this Agreement, and Hospital agrees to provide each Contractor reasonable access to its books and records relating solely to services provided pursuant to this Agreement, but in either case only to the extent reasonably necessary and/or related to any legitimate business purpose of the party receiving such access arising pursuant to this Agreement.

In 2011, the Hospital entered into an exclusive contract with GPR for the provision of radiology services at the Hospital, but the contract excluded studies performed at KIC because of the existing contract between the Hospital, Plains Radiology, and GPR.

Two years into the contract, Plains Radiology noticed a volume work reduction from KIC. Specifically, Plains Radiology claimed that its annual billings dropped from $382,815 in 2009; to $155,019 in 2011; to $29,606 from January 1 to September 30 in 2014. Concerned about the Hospital's compliance with the contract, Plains Radiology sent a letter to the Hospital requesting "a list of patients done at the imaging center on the weeks identified on the attached schedule as '[Plains Radiology]'. The purpose of [the] request is to verify compliance with the [p]rofessional [s]ervices [a]greement." The Hospital refused Plains Radiology's request, claiming concerns for confidentiality.

In September 2014, at the conclusion of the initial 5-year contract term, the Hospital terminated the contract. Plains Radiology filed a complaint for breach of contract and breach of duty of good faith and fair dealing. Specifically, Plains Radiology claimed that the Hospital

breached the agreement by "improperly divert[ing] to GPR . . . the supervision and interpretation of imaging studies provided at [KIC] during weeks contractually allocated to [Plains Radiology] exclusively." Moreover, the complaint claimed that the Hospital breached an implied covenant of good faith and fair dealing based on the Hospital wrongfully refusing to provide Plains Radiology with access to information concerning the allocation of services during the weeks contractually allocated to Plains Radiology.

As a result of the complaint, Plains Radiology was able to obtain by subpoena, studies from Valley Medical, a medical billing and management company in Kearney providing billing for Plains Radiology and GPR. Valley Medical provided detailed records from all KIC imaging studies performed during the 5-year agreement. In addition to including this information regarding billing, the CEO of Valley Medical stated in a letter providing the billing information that "[b]ecause of a process change in [Valley Medical's] billing office, [Valley Medical] [is] unable to distinguish [KIC] studies from [the] Hospital studies, starting in April 2011." Ronald J. Nebbia, CPA, then analyzed the records in conjunction with the Hospital's medical records and determined that, in total, professional service charges of $592,749 were billed by GPR for diverted studies over the term of the contract, causing Plains Radiology a lost revenue of $273,332 after reduction for payor discounts and billing expenses.

Plains Radiology filed a motion for partial summary judgment on its claim for breach of contract and the Hospital filed a motion for summary judgment on all claims. The district court held a hearing on the motions for summary judgment in May 2016.

After considering the motions, in June 2016, the district court granted the Hospital's motion for summary judgment, denied Plains Radiology's motion, and dismissed the case. The district court determined that the contract was unambiguous and did not consider extrinsic evidence of intent or party expectation. The district court relied on the contract's plain language and determined that, despite the contract granting exclusive rights to GPR and Plains Radiology to provide radiology services to the Hospital, the contract did not "guarantee[] proportional rights to provide services." The district court determined that the coverage schedule obligated the practices to provide coverage for KIC, but did not provide "exclusive rights to either office to perform supervision and studies of images in the specific weeks shown in the [c]overage [s]chedule." Additionally, the district court determined that because the agreement did not provide Plains Radiology with the exclusive right to perform image studies, that Plains Radiology's requests to verify compliance with the contract and the Hospital's refusal to provide information because of confidentiality concerns, did not result in a breach of good faith and fair dealing in failing to provide the information. As a result, the district court determined the Hospital did not breach the contract, granted the Hospital's motion for summary judgment and overruled Plains Radiology's partial motion for summary judgment.

ASSIGNMENTS OF ERROR

Plains Radiology's assignments of errors, consolidated and restated, are that the district court erred in: (1) granting the Hospital's motion for summary judgment and dismissing the case with prejudice; (2) adopting an interpretation of the parties' contract in reliance upon the alleged reasonable expectations of the parties; (3) adopting an interpretation of the parties' contract that

renders the contract without sufficient mutuality of obligation; and (4) denying Plains Radiology's motion for partial summary judgment.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

The construction of a contract is a question of law, and is reviewed de novo. *Labenz v. Labenz,* 291 Neb. 455, 866 N.W.2d 88 (2015).

## ANALYSIS

### GRANTING HOSPITAL'S MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM

Plains Radiology argues the district court inappropriately granted the Hospital's motion for summary judgment as the contract between the parties unambiguously grants Plains Radiology the exclusive right to provide radiology services for images performed at KIC during the weeks allocated in the schedule.

When interpreting a contract, a court must initially determine, as a matter of law, if the contract is ambiguous. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015). If a contract is written in clear and unambiguous language, it is not subject to interpretation or construction and must be enforced according to its terms. *Id*. Ambiguity exists in a contract when a word, phrase, or provision within the contract has, or is susceptible to, at least two reasonable but conflicting interpretations or meanings. *Id*. Determining whether an ambiguity exists is made on an objective basis, not by the parties' subjective contentions. *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015). When a contract is unambiguous, the parties' intentions must be determined from the contract itself, without the use of extrinsic evidence to explain the contract's terms. *Id*. If a contract's terms are clear, a court may not resort to the rules of construction and must give the terms their plain and ordinary meaning as a reasonable person would understand them. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

Although the contract provided that the "[c]ontractors shall provide Radiology Services pursuant to the schedule set forth at Exhibit A (the 'Coverage Schedule')", it does not specifically grant an exclusive right to perform necessary services at KIC based on the outlined schedule. In addition, when reading provision (2)(c) of the contract, the language unambiguously provides that the Hospital is required to use Plains Radiology or GPR, but not to the exclusion of one provider over the other. The agreement indicates that Plains Radiology and GPR "shall have the exclusive right to furnish Radiology Services within the Facility during the term of this Agreement" with the caveat that "radiology and diagnostic imaging procedures and ancillary services provided elsewhere in the Department or the Hospital (i.e. to any Hospital patients who do not receive

imaging services at the Facility) shall not be subject to the exclusivity requirements of this Agreement."

This agreement provides that Plains Radiology and GPR have an exclusive right to furnish radiology services for the Hospital, but does not indicate any prohibition from either provider to perform radiology services during a week "assigned" to the other provider. We agree with the district court's determination that the agreement had "no clear or articulated intent to provide exclusive rights to either office or to perform supervision and studies of images in the specific weeks shown in the Coverage Schedule."

Viewing the evidence in the light most favorable to Plains Radiology, we determine there is no genuine issue of material fact as to whether there was a breach of contract. The Hospital did not have an exclusive requirement to use Plains Radiology or GPR based upon the outlined schedule, only an exclusive requirement to have Plains Radiology and GPR as providers. Therefore, the district court did not err in granting the Hospital's motion for summary judgment on the breach of contract claim.

### GRANTING HOSPITAL'S MOTION FOR SUMMARY JUDGMENT ON GOOD FAITH AND FAIR DEALING CLAIM

Plains Radiology also alleges the district court erred in entering summary judgment in the Hospital's favor on its claim for good faith and fair dealing regarding the Hospital's obligation to provide Plains Radiology access to records of GPR patients. The court granted summary judgment against Plains Radiology on its good faith and fair dealing claim for the reason that it had determined there was no exclusive right for Plains Radiology to perform studies on the weeks allocated in the coverage schedule. Because we have determined that the district court properly determined that there was no exclusivity and no breach of contract, it was also not error for the court to grant summary judgment on the good faith and fair dealing claim.

### REASONABLE EXPECTATIONS OF PARTIES

Plains Radiology contends the district court erred in considering the reasonable expectations of the contracting parties because reasonable expectations are not relevant to an ordinary commercial transaction and may only be considered when a contract is ambiguous. We agree with the Hospital's synopsis of Plains Radiology's position: "a review of [Plains Radiology's] arguments reveals that they are based on its expectations under the Agreement, rather than the Agreement's plain language. It is requesting that this Court find in its favor based upon the bargain it would have liked to have made, in hindsight, rather than the bargain actually made in the Agreement[.]" Brief for appellee at 19. Based on our determination above that the Hospital is limited to the use of Plains Radiology or GPR, but not to the exclusion of one over the other, we need not address this issue further.

### MEANINGFUL MUTUAL PROMISES

Plains Radiology also claims that the district court erred in adopting a construction of the contract that would improperly render it without mutuality in the obligations imposed because it results in an agreement without meaningful mutual promises. Plains Radiology claims the order

creates an agreement wherein one side has mandatory promises while the other has optional promises.

In this instance, the Hospital could not use a provider outside of Plains Radiology or GPR. There is no indication that the Hospital chose any other provider outside of Plains Radiology or GPR and did not breach its contractual obligations. Therefore, this assignment of error is without merit.

DISTRICT COURT'S DENIAL OF PLAINS RADIOLOGY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Plains Radiology argues that it is entitled to judgment as a matter of law on the claim for breach of contract because the contract obligated the Hospital to direct imaging studies to Plains Radiology during the weeks allocated by the schedule, leaving no factual dispute regarding the Hospital's failure to do so.

Based on our determination above that the contract did not obligate the Hospital to exclusively direct studies based upon the proposed schedule, the circumstances dictate that we likewise affirm the district court's determination consistent with this opinion.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court which granted summary judgment in favor of the Hospital on the breach of contract and good faith and fair dealings claims and denied Plains Radiology's motion for partial summary judgment.

AFFIRMED.